Filed 3/29/16  P. v. Ramos CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B265180 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA219022) |
| v. | |
| JOSE RODRIGUEZ RAMOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. William C. Ryan, Judge.  Affirmed.

California Appellate Project, Jonathan B. Steiner, Executive Director, and Richard B. Lennon, Staff Attorney, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose Rodriguez Ramos (appellant) was convicted of a possessing a weapon while in prison (Pen. Code, § 4502, subd. (a).)[1]  The trial court found true the allegations that appellant had suffered two prior convictions for serious felonies.  (Former §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)  Pursuant to the "Three Strikes" law, appellant was sentenced to 25 years to life.  The trial court ordered that the sentence run consecutive to a sentence appellant was already serving.  (*People v. Ramos* (Oct. 31, 2002, B156047) [nonpub. opn.] (*Ramos I*).)

In his first appeal, appellant argued that "(1) there was insufficient evidence that appellant, who had just been searched and handcuffed, knowingly possessed the weapon; (2) the trial court abused its discretion by failing to strike one of appellant's prior convictions; and (3) appellant's sentence of 25 years to life constitutes cruel and unusual punishment under the circumstances of this case and must be modified."  (*Ramos I*, *supra*, B156047, at p. 2.)  We affirmed the judgment.

Now, in his second appeal, appellant challenges the denial of his Proposition 36[2] petition for recall and resentencing.

We find no error and affirm.

## FACTS[3]

"*I.*    *Prosecution Evidence*

"On May 21, 2001, Los Angeles County Deputy Sheriff Daniel Perez was working in the module housing high-profiled inmates in the Los Angeles County men's jail.  He

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.
      Section 4502, subdivision (a) provides:  "Every person who, while at or confined in any penal institution, . . . possesses or carries upon his or her person or has under his or her custody or control . . . any dirk or dagger or sharp instrument . . . is guilty of a felony and shall be punished by imprisonment in the state prison for two, three, or four years, to be served consecutively."

[2]    Proposition 36 is the Three Strikes Reform Act of 2012.  (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 596.)

[3]    We have utilized the statement of facts from *Ramos I* to establish the background of this case.

2

and other officers were engaged in searching the inmates in their cells prior to taking them to the roof for recreation. The officers performed a strip search of the inmates and checked the inmates' clothing. After the men were dressed, they were handcuffed through an opening in the cell door. The inmates' hands were behind their backs.

"Deputy Perez observed appellant as he stepped out of his cell. Instead of following the path he should have taken, appellant walked the other way, which was unusual. Appellant stopped at a cell and then came back and quickly exited after all the other inmates were almost out of the module. Deputy Perez did not see anything being passed to appellant, and he did not see appellant put anything in his pocket.

"Deputy Perez testified at appellant's trial that repeat searches of the inmates are randomly conducted in the hallway outside the module. The inmates are ordered to stop there and face the wall. Deputy Perez approached appellant and saw a bulge in his right front pocket. Deputy Perez put his hand in appellant's pocket and extracted a metal shank. Appellant looked at it and looked away without saying anything.

"Deputy Perez testified that he would never place a shank in an inmate's pocket so that the inmate would get additional time in prison. He stated that the officers were very concerned about their own security, and that such an action would endanger himself and other officers. Deputy Perez said that neither he nor the other officers present (Deputies Miguel Campos, Armando Barrera, and Miranda) put the shank in appellant's pocket. Deputy Perez never threatened appellant and did not say, 'Asshole, I'm going to get you' to appellant. Deputy Perez stated that it was county jail policy not to test shanks for fingerprints.

"Deputy Armando Barrera also saw appellant exit his cell on the morning of May 21, 2001. He saw appellant walk to the rear in the opposite direction of the 'traffic,' which was unusual. He saw Deputy Perez withdraw the shank from appellant's pocket. He did not plant the shank on appellant.

"Deputy Campos saw appellant exit his cell and go towards the back cells as all of the other inmates began walking out. Appellant took approximately 10 steps in the wrong direction, from the center of the line to the back. Appellant then followed behind

3

the others.  He saw the shank after Deputy Perez pulled it from appellant's pocket. Neither he nor Deputy Miranda planted the shank on appellant.  Deputy Campos heard no conversation between Deputy Perez and appellant.

"*II.    Defense Evidence*

"Appellant testified in his defense.  He admitted having two convictions for assault with a weapon.  When he was allowed out of his cell on the day in question, he walked towards the front of the hallway.  He did not walk against traffic.  In the hallway, facing the wall, he was aware of officers at his back.  He did not understand what they were saying in English.  After the officers were finished talking, they sat appellant on a bench in the hallway and cuffed him to the bench.  The officers showed him a piece of metal and asked him what it was.  He told them he did not know.  The object was similar to the shank in the People's exhibit.  Appellant never had the object in his pocket and did not know where it came from.  He thought someone might have slipped the object in his pocket.  He was never aware of its presence.

"Steven Mattson (Mattson) testified that he was also an inmate going to the roof to exercise that day.  His cell was three cells farther away from the exit door than appellant's cell.  While the men were still near their cells, he heard Deputy Perez say to appellant: 'You are a little asshole.  I'm going to get you.'  Ramos asked Deputy Perez why he was giving him a hard time.  Mattson asked Ramos what was up, and Ramos replied: 'I don't know, dude.  He's got a hard-on for me or something.'  He saw Deputy Perez pat down appellant in the hallway.  Mattson acknowledged being a convicted felon 'a couple of times.'

"Adolfo Bojorquez was another fellow inmate of appellant's who was on his way to the roof that day.  He saw all the deputies walk up to appellant in the hallway.  One of the deputies was holding something, but Bojorquez could not see what it was.  He believed it was impossible for appellant to have anything in his pocket because of the thorough prior search.  Deputies plant objects on inmates they do not like.  Bojorquez refused to answer the prosecutor's questions as to whether or not he murdered a Long Beach police officer and shot another officer numerous times.

4

"*III.    Rebuttal*

"Deputy Perez was doubtful that inmate Mattson was one of the inmates who went to the roof the day of the incident.  After Mattson testified, Deputy Perez verified on the jail computer that Mattson had been housed in the discipline area module on the day of the incident.  This module is on the other side of the jail from the area where appellant was housed.  The officer in charge of custody of records at the jail testified that Mattson was in the 'high-power' disciplinary module from April 21, 2001, through May 23, 2001, and he produced two reports reflecting this."  (*Ramos I*, *supra*, B156047, at pp. 2–4)

*IV.    The Petition For Recall and Resentencing*

Appellant filed his Proposition 36 petition on July 9, 2014. CT 15)

The People opposed the petition, arguing that appellant was ineligible for Proposition 36 relief because he was armed with a deadly weapon during the commission of the current offense, and because he was a violent, unrepentant criminal who posed a danger to public safety.

For the hearing, the People submitted the *Ramos I* opinion and the transcripts of the trial testimony of Deputy Perez, Deputy Barrera and Deputy Campos.

The trial court denied the petition on the ground that appellant was armed with a deadly weapon during the commission of the current offense and therefore was not eligible for recall and resentencing.

This timely appeal followed.

**DISCUSSION**

Proposition 36 "created a postconviction release proceeding whereby a [defendant] who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety.  [Citation.]"  (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167–168.)  A defendant is disqualified if, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to

5

cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii), 1170.126, subd. (e)(2).)[4]

A defendant will be considered armed with a deadly weapon if the weapon was available for use, either offensively or defensively. In other words, he or she is armed if the weapon was under his or her immediate dominion and control. (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1029 (*Osuna*); *People v. White* (2014) 223 Cal.App.4th 512, 524 (*White*).) As held in recent appellate decisions, a defendant who was armed with a deadly weapon while committing the third strike offense of unlawfully possessing that weapon is ineligible for recall and resentencing. (*Ibid*; *Osuna*, at pp. 1032–1040; *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1054 (*Blakely*); *People v. Brimmer* (2014) 230 Cal.App.4th 782, 798 (*Brimmer*); *People v. Hicks* (2014) 231 Cal.App.4th 275, 284 (*Hicks*).)

Appellant does not dispute that he is ineligible if we were to follow *Osuna*, *White*, *Blakely*, *Brimmer* and *Hicks*. On appeal, his argument is that those cases were wrongly decided because they misinterpreted the controlling statutes. Thus, the sole issue on appeal is statutory interpretation.

"In interpreting a voter initiative such as [a proposition], we apply the same principles that govern the construction of a statute. [Citations.]" (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.)

Under the established rules of statutory construction, "we begin by examining the language of the statute (or regulation) itself, giving the words their ordinary and usual

---

**4** Section 1170.126 was added by Proposition 36. Section 1170.126, subdivision (e) provides: "An inmate is eligible for resentencing if: [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." Sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii) both provide that a defendant shall be sentenced as a second strike offender unless the prosecutor pleads and proves that "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person."

6

meaning.  [Citation.]  We seek to avoid any interpretation that renders part of the statute "'meaningless or inoperative'" or that makes any language mere surplusage.  [Citations.]  When the language is clear, we apply the language without further inquiry.  [Citations.]  'In determining legislative intent, courts look first to the words of the statute itself:  if those words have a well-established meaning . . . there is no need for construction and courts should not indulge in it.'  [Citation.]  [¶]  Only if the language is ambiguous and susceptible of more than one reasonable meaning do we consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'  [Citation.]"  (*Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 568–569.)

First, appellant argues that the phrase "[d]uring the commission of the current offense, the defendant used a . . . deadly weapon" is not implicated unless the deadly weapon facilitated the current offense.  (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)  He contends that "[h]aving a gun available does not further or aid in the commission of the crime of possession of a firearm" (*Osuna*, *supra*, 225 Cal.App.4th at p. 1032) and, as a consequence, a weapon possession offense in which a defendant was armed with a deadly weapon does not implicate sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii).  In other words, he contends the arming must be tethered to the current offense.  This very argument was rejected in *Osuna*.  It noted that the statutes require "a temporal nexus between the arming and the underlying felony, not a facilitative one."  (*Osuna*, at p. 1032.)  This is because "'[d]uring' is variously defined as 'throughout the continuance or course of' or 'at some point in the course of.'  [Citation.]"  (*Ibid.*)  This interpretation comports with the plain language of the statutes, and we adopt it.[5]

---

[5]      Appellant complains that *Osuna* does "not explain why the definition of 'during,' which indeed includes a temporal requirement, means *only* a temporal connection; they just assume so."  This is untrue.  *Osuna* examined the dictionary definition of "during" and gave effect to its plain meaning.  (*Osuna*, *supra*, 225 Cal.App.4th at p. 1032.)

Coming at this first argument from a different direction, appellant urges us to conclude that we should harmonize Proposition 36 with firearm enhancements, such as section 12022, subdivision (a)(1). It provides that "a person who is armed with a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment pursuant to subdivision (h) of Section 1170 for one year, unless the arming is an element of that offense." (§ 12022, subd. (a)(1).) Case law establishes that for a defendant to be subject to additional punishment for being armed with a firearm in the commission of a felony, the arming must have a facilitative nexus, i.e., the arming must have furthered the commission of the underlying felony. (*Osuna*, *supra*, 225 Cal.App.4th at p. 1031; *People v. Bland* (1995) 10 Cal.4th 991, 1002.) According to appellant, the electorate must have intended the phrase "during the commission of the current offense" in sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii) and the phrase "in the commission of a felony" in section 12022, subdivision (a)(1) to mean the same thing. But the language is different, and we agree with *Osuna*, which stated, "By including as a disqualifying factor an inmate's mere intent, during commission of the current offense, to cause great bodily injury to another person, the electorate signaled its . . . intent that disqualifying conduct not be limited to what is specifically punishable as an offense or enhancement. Apparently recognizing the maxim *expressio unius est exclusio alterius*—the expression of some things in a statute necessarily means the exclusion of other things not expressed [citation]—voters rendered ineligible for resentencing not only narrowly drawn categories of third strike offenders who committed particular, specified offenses or types of offenses, but also broadly inclusive categories of offenders who, during commission of their crimes—and regardless of those crimes' basic statutory elements—used a firearm, were armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (*Osuna*, *supra*, 225 Cal.App.4th at p. 1036.)[6]

---

[6] Notably, *Hicks* stated: "Subdivision (e)(2) of section 1170.126 allows resentencing if '[t]he inmate's current sentence was not imposed for any of the offenses appearing [in the cited statutes].' One of those statutory provisions . . . does not identify

8

Second, appellant argues that "[t]he plain language of [sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii)] suggest[s] that the factors listed in subdivision (iii) must attach to the current offense as an addition and not just be an element of the current offense." He apparently contemplates that he is eligible because being armed with a deadly weapon was an element of his current offense, and therefore it does not disqualify him. We disagree for two reasons. Arming is not an element of his current offense under section 4502, subdivision (a). Even if it was, we do not perceive how that would assist his cause. The plain language of the relevant statutes indicates it is triggered if a defendant was armed during the commission of the current offense, and there is no qualifier.

As a corollary, appellant posits that sections 667, subdivision (e)(2)(C)(iii), 1170.12, subdivision (c)(2)(C)(iii) and 1170.126, subdivision (e)(2) "are not meant to exclude crimes in which one of the factors is an element of the offense, and therefore, would render every commission of the particular offense ineligible." He again suggests that if arming is an element of a defendant's current crime, then the defendant is eligible under Proposition 36. His argument is purely academic because arming is not an element of his current offense. In any event, his interpretation violates the plain language of the statutes, which is triggered so long as there was arming during the commission of the current offense.

Third, appellant suggests that "[n]one of the subdivisions related to the current offense disqualifies defendants who are serving sentences for the mere commission of

---

specific offenses but, instead, identifies circumstances of the offense—that is, using a firearm, being armed with a firearm or deadly weapon, or intending to cause great bodily injury. [Citations.] . . . [¶] The eligibility criteria here refer to something that occurs '[d]uring the commission of the current offense,' that being 'the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.' [Citations.] By referring to those facts attendant upon commission of the actual offense, the express statutory language requires the trial court to make a factual determination that is not limited by a review of the particular statutory offenses and enhancements for which a petitioner's sentence was imposed." (*Hicks*, *supra*, 231 Cal.App.4th at pp. 284–285.)

possession of a concealed dirk or dagger.  Applying basic principles of statutory construction to that omission leads to the conclusion that the simple violation of [section 4502] is not covered."  The meaning of this statement is unclear.  If appellant is suggesting that he is not ineligible because section 4502, subdivision (a) is silent on the topic, we reject the suggestion because the relevant statute under Proposition 36 is section 1170.126, subdivision (e)(2), and its incorporation of sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii) by reference.  If appellant is suggesting that he is not ineligible because sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii) do not specifically state that they apply to a defendant who possessed a concealed dirk or dagger, we reject the suggestion because they broadly apply to a defendant who was armed with a deadly weapon, and there is no dispute that appellant was armed with a deadly weapon.

Fourth, appellant notes that the statutes refer "to being armed 'during the commission of the current offense,'" and then he states that this "qualifying language only makes sense if there is another offense to which the arming attaches."  In essence, appellant urges that under sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii), there must be an arming offense separate from the current offense, whatever that might be.  We decline to accept appellant's interpretation.  We must interpret a statute in a reasonable and commonsense manner.  (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 997.)  Because sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii) do not refer to an arming offense separate from the current offense, it would be unreasonable to construe them as requiring a separate arming offense to be triggered.  Insofar as this fourth argument is a rehash of appellant's first argument regarding the need for a facilitative nexus, our reasoning on the first argument applies here, too.

Fifth, appellant maintains that if the electorate that voted for Proposition 36 had intended to exclude all possession-of-weapon crimes from its reach, it would have said so.  We find this argument unpersuasive given that it is based on a false premise.  Case law establishes that "'[a] defendant has actual possession when [a] weapon is in his

10

immediate possession or control. He has constructive possession when the weapon, while not in his actual possession, is nonetheless under his dominion and control, either directly or through others. [Citations.]' [Citation.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1029.) Thus, a person in actual possession of a weapon is armed, but a person in constructive possession may not be. (*Id.* at p. 1030.) Under Proposition 36, not all possession-of-deadly-weapon crimes are disqualifying because a defendant can be in constructive possession without being armed.[7] Regardless, there is no need for us to consider extrinsic aids when interpreting Proposition 36 because, as we have already indicated, the meaning of the relevant statues is unambiguous.

Sixth, appellant says *Osuna*, *White*, *Blakely*, *Brimmer* and *Hicks* "make no sense in light of the fact that the statutory punishment for a violation of section 4502 is one of the lesser range of sentences in the Penal Code. Obviously, the electorate and their legislators do not see this crime as one of the more dangerous crimes that require lengthy detention. Yet, under these courts' interpretations, the vast majority of defendants who knowingly possess a gun or other weapon would be barred from the benefits of Proposition 36." Impliedly, he suggests that because a violation of section 4502, subdivision (a), by itself, does not give rise to a lengthy sentence, the electorate could not have intended that a defendant who was armed during a violation of section 4502, subdivision (a) would be ineligible under Proposition 36. This logic does not hold. Because the plain language controls, we need not look to legislative history when construing Proposition 36. That observation aside, there is nothing in the record to indicate that the electorate specifically considered section 4502 when voting for Proposition 36. What it considered, and what is at issue here, is whether a current third

---

[7]     *White* explained: "[W]hile the act of being armed with a firearm—that is, having ready access to a firearm [citation]—necessarily requires possession of the firearm, possession of a firearm does not necessarily require that the possessor be armed with it. For example, a convicted felon may be found to be a felon in possession of a firearm if he or she knowingly kept a firearm in a locked offsite storage unit even though he or she had no ready access to the firearm and, thus, was not armed with it." (*White*, *supra*, 223 Cal.App.4th at p. 524.)

strike offense can be recalled and a defendant resentenced if he or she was armed with a deadly weapon during that current offense.[8]

Seventh, appellant posits that "had the intent been to render ineligible for a sentence recall anyone who had a weapon available at the time of the offense, irrespective of whether such availability furthered the crime, it would have been much easier to make such an exclusion clear by so stating. . . . Drafters attempting to make a broader exclusion would not use a term such as 'arming' which has been construed to also require a facilitative nexus." This argument is not based on a rule of statutory construction, so we could pass on it without comment. Nonetheless, we wish to respond with the following points. Sections 667, subdivision (e)(2)(C)(i)-(ii) and 1170.12, subdivision (c)(2)(C)(i)-(ii) refer to specific offenses, such as certain drug and sex offenses. With respect to sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii), the drafters chose to create broad categories of disqualification for Proposition 36 relief. We find it indisputable that the design of the statutes was intentional. Regarding the use of arming language, there is nothing about it that requires second guessing. Contrary to what appellant suggests, the drafters used different language in Proposition 36 ("during the commission of") than in firearm enhancement statutes ("in the commission of"), and we therefore decline to construe Proposition 36 to coincide with firearm enhancement law.

Eighth, appellant argues that Proposition 36 was intended to release persons who pose little or no risk to the public, a defendant who carries a concealed dirk or dagger in prison qualifies as one of those low risk persons, and therefore Proposition 36 does not

---

[8]     Further to this point, we note that *Blakely* aptly stated: "In enacting section 1170.126 as part of Proposition 36, the issue before the voters was not whether a defendant could or should be punished more harshly for a particular aspect of his or her offense, but whether, having already been found to warrant an indeterminate life sentence as a third strike offender, he or she should now be eligible for a lesser term." (*Blakely*, *supra*, 225 Cal.App.4th at p. 1054.)

make such a defendant ineligible.[9]  We cannot accept this argument.  As our Supreme Court noted, dirks "have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such.  [Citations.]"  (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1029.)  A defendant who has carried a concealed dirk or dagger in prison during the commission of a third strike offense would pose a risk to the public if that defendant was released.  More importantly, this argument fails because the plain language of the statutes is clear, and there is no reason for us to consider anything other than that language.[10]

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST


We concur:



_____, P. J.
BOREN



_____, J.
CHAVEZ

_____

[9]     There is no dispute that the shank found on appellant's person qualified as a dirk or dagger.

[10]     In his reply brief, appellant expounds upon his eighth argument by stating: "Having a weapon readily available for use, even in a jail setting, is generally not considered dangerous.  It only becomes dangerous when it might facilitate a crime, when it might be used for violence."  We disagree.  It is always dangerous for a third strike felon to be armed with a deadly weapon.

13